UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AZIBO AQUART, | : | |
|     Plaintiff, | : | |
| | : | PRISONER |
| v. | : | CASE NO. 3:08cv1562 (VLB) |
| | : | |
| SUE JACOBOWSKI, et al., | : | |
|     Defendants. | : | |

## RULING ON DEFENDANTS' MOTION TO DISMISS [Doc. #13]

Plaintiff Azibo Aquart ("Aquart") filed a complaint pro se under 42 U.S.C. § 1983 (2000) claiming defendants Jacobowski and Senecal violated his right to a speedy trial and right to visitation with his baby girl. Defendants move to dismiss all claims in the complaint. For the reasons that follow, defendants' motion should be granted in part and denied in part.

**I. Standard of Review**

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (internal citations omitted). In evaluating this plausibility standard, the Court liberally construes pro se complaints. See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

II.   Facts

In September 2005, while he was a pretrial detainee, Aquart was confined at Cheshire Correctional Institution in Cheshire, Connecticut. At that time, Connecticut criminal charges were pending against Aquart. On or about September 30, 2005, Aquart began to send requests to file a speedy trial motion pursuant to Connecticut General Statutes § 54-82c to Counselor Sue Jacobowski. Aquart states that Counselor Jacobowski refused to provide him with the necessary forms to start the speedy trial motion process. Aquart also claims that Counselor Supervisor Senecal refused to provide him with information about his pending state charges and process his request for a speedy trial. In May 2006, Acquart was acquitted of the charges filed against him in the Connecticut Superior Court.

In December 2005, a Department of Correction officer failed to deliver a detainer to Aquart pertaining to an arrest warrant charging him with a federal

2

crime and falsely stated that Aquart had refused to sign for the detainer. Because Aquart did not receive the arrest warrant detainer, he was unable to assert his right to a speedy trial as to the federal criminal charge.

Aquart's fiancee gave birth to a daughter on October 26, 2005. Counselor Jacobowski refused to provide Aquart with the necessary forms to permit his daughter, his fiancee and his mother to visit him at Cheshire. Aquart is an African American. Counselor Jacobowski informed Aquart that he must provide the baby's social security number and birth certificate before the baby could be placed on Aquart's visitation list. No other inmates were required to provide the social security numbers or birth certificates of their potential visitors. Counselor Jacobowski provided the necessary visitation forms to inmates of other races, but not to Aquart. Aquart seeks monetary damages and an apology from the defendants to his family.

III. Discussion

Aquart asserts that defendants Senecal and Jacobowski violated his First, Fifth, Sixth and Fourteenth Amendment rights. Defendants Senecal and Jacobowski move to dismiss all claims in the complaint.

A. First Amendment Claims

Aquart claims that the defendants violated his First Amendment right of access to the courts by refusing to process or provide him with forms to submit a written notice and request for speedy disposition of pending state criminal charges to the prosecuting attorney and the court pursuant to Connecticut

General Statutes § 54-82c.   Aquart also asserts that the defendants failed to advise him of his speedy trial rights as to a detainer that had been lodged against him by the United States Marshal's Service pertaining to a warrant for his arrest on federal criminal charges.

It is well settled that inmates have a First Amendment right to "petition the Government for a redress of grievances."  U.S. Const. amend. I.  This right, which is more informally referred to as a "right of access to the courts," requires States "'to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights'" in collateral or direct challenges to their sentences or in an action challenging their conditions of confinement. Lewis v. Casey, 518 U.S. 343, 350-51, 355 (1996) (quoting Bounds v. Smith, 430 U.S. 817, 825  (1977)).  To state a claim of denial of access to the courts, a plaintiff must allege that a defendant caused an "actual injury" by taking action or being responsible for actions that "hindered [plaintiff's] efforts to pursue a legal claim." Lewis, 518 U.S. at 349, 351.   Thus, actual injury pertains to the underlying claims that a plaintiff could have asserted if he had not been denied access to court. See Christopher v. Harbury, 536 U.S. 413, 415 (2002) (explaining that the right to access the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court.").  In Lewis, the Supreme Court cautioned that "the [actual] injury requirement is not satisfied by just any type of frustrated  legal claim" but requires "an arguable" nonfrivolous claim.  Id. at 353, 354 n. 3.

1.  <u>Connecticut Criminal Charges</u>

Aquart asserts that the defendants hindered his efforts to pursue his right to a speedy trial with regard to Connecticut criminal charges pending against him as of September 2005 in violation of the Sixth Amendment and Conn. Gen. Stat. § 54-82c.[1]  Defendants contend that Aquart has not alleged that they deliberately or

---

[1] **Connecticut General Statutes § 54-82c provides:**

> **(a) Whenever a person has entered upon a term of imprisonment in a correctional institution of this state and, during the continuance of the term of imprisonment, there is pending in this state any untried indictment or information against such prisoner, he shall be brought to trial within one hundred twenty days after he has caused to be delivered, to the state's attorney or assistant state's attorney of the judicial district or geographical area, in which the indictment or information is pending, and to the appropriate court, written notice of the place of his imprisonment and his request for final disposition to be made of the indictment or information. For good cause shown in open court, the prisoner or his counsel being present, the court may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the warden, Community Correctional Center Administrator or other official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner and any decisions of the Board of Pardons and Paroles relating to the prisoner.**
>
> **(b) The written notice and request for final disposition referred to in subsection (a) hereof shall be given or sent by the prisoner to the warden, Community Correctional Center Administrator or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.'**
>
> **(c) The warden, Community Correctional Center Administrator or other official having custody of the prisoner**

5

intentionally failed to provide him with the necessary forms to file his notice and request for speedy disposition of pending state charges. Aquart asserts that he made repeated requests to both defendants to provide him with forms and/or information in order to process his request for a speedy trial as to the charges pending against him in state court. Aquart attaches exhibits to his complaint documenting his requests and the responses to those requests by both defendants.

The defendants also argue that Aquart has failed to allege that he suffered an injury due to their actions because he was already going to court and he was represented by counsel in the state criminal proceedings. Aquart alleges, however, that although prison officials transported him to the court house during October and November 2005, his attorney never brought him before a judge. Aquart also asserts that it was difficult to make legal calls to his attorney from prison and his attorney was often unavailable. Aquart argues that because his attorney was unavailable to file a motion for speedy trial on his behalf, the defendants conduct in preventing him from filing his own speedy trial request caused him to suffer an actual injury. Construing Aquart's allegations liberally

---

shall promptly inform him in writing of the source and contents of any untried indictment or information against him concerning which the warden, administrator or other official has knowledge and of his right to make a request for final disposition thereof.'

(d) Escape from custody by the prisoner subsequent to his execution of the request for final disposition referred to in subsection (a) hereof shall void the request.' "

6

as the court must when deciding a motion to dismiss, the court cannot conclude that the Aquart would be unable to produce evidence to support his claim that defendants denied him access to courts with regard to his attempts to assert his right to a speedy trial in connection with the Connecticut criminal charges pending against him. Thus, the motion to dismiss is denied on this ground.

### 2. Federal Criminal Charges

Aquart asserts that in September 2006, he learned from the Connecticut Correctional Ombudsman, James C. Amis, that he was entitled to apply for a speedy trial with regard to a federal criminal charge pending against him as of December 2005. The Ombudsman informed Aquart that on December 12, 2005, the United States Marshal had lodged a detainer with the Department of Correction pertaining to an arrest warrant charging him with conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841 and 846. Aquart's Connecticut Department of Correction master file reflected that he had refused to sign for the detainer. Aquart alleges that he never saw the detainer or refused to sign for it. Aquart contends that both defendants denied him his right to a speedy trial with regard to the federal criminal charge set forth in the detainer lodged against him in December 2005.

The docket sheet in United States v. Aquart, et al., Case No. 3:05cr309(PCD) reflects that on December 19, 2005, the court appointed counsel to represent Aquart and plaintiff pleaded guilty to one count of conspiracy to possess with intent to distribute Cocaine base. Furthermore, on February 3,

7

2006, Aquart's attorney moved for a continuance of the trial date and noted that Aquart had signed a waiver of speedy trial. Accordingly, Aquart has not alleged that he suffered an injury as to the claim that defendants denied him his right to request a speedy trial in connection with the federal criminal charge included in the detainer lodged against him on December 12, 2005. The motion to dismiss is granted as to the denial of access to courts claim as it relates to Aquart's federal criminal charge.

B.   Fifth Amendment Claim

Aquart asserts that the defendants subjected him to successive punishments in violation of the Fifth Amendment when they failed to process his request for speedy trial as to the pending Connecticut charges in a timely manner. The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states by the Fourteenth Amendment, provides that a person shall not "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "The Clause protects against both a subsequent prosecution for the same offense after acquittal or conviction as well as multiple punishments for the same offense." United States v. Hernandez-Fundora, 58 F.3d 802, 805 (2d Cir.) (internal quotation marks and citation omitted), *cert. denied,* 515 U.S. 1127 (1995). Aquart acknowledges that he was not prosecuted twice for the same offense. Aquart has not alleged facts to suggest that the conduct of the defendants constituted punishment for a criminal offense. Because Aquart has not alleged that the defendants punished him multiple times for the same criminal

8

offense, the motion to dismiss is granted as to the Fifth Amendment claim.

C. <u>Sixth Amendment Claim</u>

The Sixth Amendment, applied to the States through the Fourteenth Amendment, guarantees that

> [i]n all criminal prosecutions, the accused shall ... shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI. Defendants argue that Aquart's Sixth Amendment claim should be dismissed because he concedes that he was appointed counsel in the state criminal case. Defendants argument is misplaced as Aquart's Sixth Amendment claims is that they violated his right to a speedy trial. Accordingly, the motion to dismiss is denied as to the Sixth Amendment claim.

D. <u>Eighth Amendment Claims</u>

Defendants argue that Aquart's allegation that they refused to permit him to visit with his daughter and mother does not constitute a violation of the Eighth Amendment. Aquart asserts that he was a pretrial detainee when defendants Senecal and Jacobowski allegedly violated his constitutional rights. The Eighth Amendment, which protects inmates against cruel and unusual punishment may be invoked only after an individual has been adjudged guilty of a crime. Claims

asserted by a pretrial detainee are reviewed under the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979) (in contrast to a sentenced prisoner, whose conditions of confinement are analyzed under the Cruel and Unusual Punishment Clause of the Eighth Amendment, "the proper inquiry [for a pretrial detainee] is whether conditions [of confinement] amount to punishment of the detainee" under the Due Process Clause of the Fourteenth Amendment). Because the Eighth Amendment is inapplicable to pretrial detainees, defendants' motion to dismiss is granted as to all Eighth Amendment claims.

    E.    <u>Fourteenth Amendment Due Process Claim</u>

As indicated above, claims of a detainee awaiting a state criminal trial are analyzed under the Due Process Clause of the Fourteenth Amendment. Conditions of confinement of a pretrial detainee that constitute punishment are unconstitutional. See Bell, 441 U.S. at 535-37. "Not every disability imposed during pretrial detention," however, "amounts to 'punishment' in the constitutional sense." Id. at 537. "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" Id. at 539.

Defendants do not acknowledge that Aquart was a detainee when they allegedly violated his constitutional rights. They argue that the Supreme Court has held that "an inmates' interest in unfettered visitation is [not] guaranteed by the Due Process Clause." The defendants do not address whether a pretrial detainee has a liberty interest in visitation or whether the denial of visitation with

family members might constitute punishment in violation of the Fourteenth Amendment. Because the defendants have not set forth an analysis of the viability of Aquart's Fourteenth Amendment visitation claims under the standard applicable to pretrial detainees, the motion to dismiss Aquart's Fourteenth Amendment claim is denied.

F. Fourteenth Amendment - Equal Protection Claim

Aquart claims that defendant Jacobowski racially discriminated against him in violation of his right to equal protection by failing to permit him to visit with family members and the mother of his child. To establish an equal protection claim based on racial discrimination, a prisoner must demonstrate that (1) he was treated differently than similarly situated prisoners (2) because of his race. See Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995) (holding plaintiff "must prove purposeful discrimination . . . directed at an identifiable or suspect class" to demonstrate equal protection violation) (citations omitted).

Aquart alleges that defendant Jacobowski refused to provide him with the necessary forms or to process his requests to permit his newborn daughter, fiancee and mother to visit him at Cheshire because he was black. Aquart also claims that defendant Jacobowski provided other inmates, who were not African American, with visiting forms and permitted them to visit with their children, step-children, nieces, nephews, brothers and sisters. These allegations are sufficient to state an equal protection claim against defendant Jacobowski. See Nash v. McGinnis, 585 F. Supp. 2d 455, 462 (W.D.N.Y.2008) ("In order to plead a facially

valid equal protection claim ... plaintiff must allege: (1) that he has been treated differently from similarly-situated inmates, and (2) that the discrimination is based upon a constitutionally impermissible basis, such as race ...."). The motion to dismiss is denied as to the equal protection claim against defendant Jacobowski.

G. Qualified immunity

Defendants contend that they are entitled to qualified immunity for their actions. The defendants have not clearly set forth their argument in their memorandum in support of the motion to dismiss. Instead, they simply include the legal standard for establishing qualified immunity and in a conclusory manner state that the facts do not support any violations of Aquart's constitutional rights or in the alternative the facts demonstrate that it was objectively reasonable for the prison officials to believe their actions did not violate Aquart's constitutional rights. Because the defendants have not adequately briefed this argument, the Court construes it as a request that they be permitted to raise qualified immunity in a motion for summary judgment or at trial if any claims survive the motion to dismiss. Accordingly, the motion to dismiss is denied without prejudice on the ground of qualified immunity.

IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss [Doc. #13] is GRANTED as to the Fifth and Eighth Amendment claims and the First Amendment denial of access to courts claim as it relates to Aquart's federal criminal charges and DENIED as to the Fourteenth Amendment visitation claim, First Amendment access to courts claim as it relates to Aquart's Connecticut criminal charges, the Sixth Amendment right to speedy trial claim and the state law claims.

IT IS SO ORDERED.

/s/
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut this 30th day of July 2010.