## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | |
|---|---|
| AZIBO AQUART | : |
| | :    Case No. 3:08cv1562 (VLB) |
| v. | : |
| | :    March 30, 2012 |
| SUE JACOBOWSKI, ET AL. | : |

## RULING GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff Azibo Aquart, is currently confined at the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island.  He commenced this civil rights action *pro se* pursuant to 28 U.S.C. § 1915.  The plaintiff alleges *inter alia* that defendants Jacobowski and Senecal violated his First Amendment right to access to courts, his Sixth Amendment right to a speedy trial and his First Amendment right to visitation with his baby girl.   On August 2, 2010, the court granted the defendants' motion to dismiss as to the Fifth and Eighth Amendment claims and the First Amendment denial of access to courts claim as it related to the plaintiff's federal criminal charged.   The plaintiff's federal visitation and speedy trial claims and access to courts claim as it relates to the plaintiff's Connecticut criminal charges as well as the state law claims remain.  The defendants have moved for summary judgment on the remaining claims.  For the reasons that follow, the motion will be granted in part.

I.     <u>Standard of Review</u>

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  *See* Rule 56(c),  Fed. R. Civ. P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The moving party may satisfy this burden by demonstrating the lack of evidence to support the nonmoving party's case.  *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

"Summary judgment is appropriate where, construing all evidence in the light most favorable to the non-moving party," *Pabon v. Wright*, 459 F.3d 241, 247 (2d Cir.2006), "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c)(2).  An issue of fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it.  *Anderson*, 477 U.S. at 248. "Unsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).  When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or present mere speculation or conjecture.  *See Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (quotations and citations omitted).  The mere of existence of a scintilla of evidence in support of the nonmoving party's position is insufficient;

2

there must be evidence on which the jury could reasonably find for him.  *See Dawson v. County of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004).

The court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party.  *See Patterson v. County of Oneida, NY*, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper.  *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Where one party is proceeding *pro se*, the court reads the *pro se* party's papers liberally and interprets them to raise the strongest arguments suggested therein.  *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  Despite this liberal interpretation, however, an unsupported assertion cannot overcome a properly supported motion for summary judgment.  *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

II.    <u>Facts</u>[1]

The following facts are undisputed unless stated otherwise.  On December 21, 2000, the plaintiff began serving a five and a half year sentence after a jury found him guilty of violating Connecticut General Statutes § 21a-277a.  On August 26,

---

[1]  **The facts are taken from defendant's Local Rule 56(a)1 Statement along with the attached exhibits and affidavits and the plaintiff's Local Rule 56(a)2 Statement and affidavit and attached exhibits  (*See* Docs. Nos. 32-2 through 32-11, 38-2 through 38-6.)**

2003, Department of Correction officials released the plaintiff on parole.  In early September 2005, the plaintiff was arrested on two counts of assault in the second degree in violation of  Conn. Gen. Stat. § 53a-60, one count of possession of a controlled substance in violation of Conn. Gen. Stat. § 21a-279(c) and one count of tampering with physical evidence in violation of Conn. Gen. Stat. § 53a-155, and one count of criminal possession of a pistol in violation of Conn. Gen. Stat. § 53a-217c. On September 6, 2005, at the Connecticut Superior Court for the Judicial District of Bridgeport, the plaintiff was arraigned in one case on the charge of assault in the second degree in violation of  Conn. Gen. Stat. §  53a-60 and in a second case on the charges of possession of a controlled substance in violation of Conn. Gen. Stat. § 21a-279(c) and tampering with physical evidence in violation of Conn. Gen. Stat. § 53a-155.  That same day, the Connecticut Board of Parole issued an Order remanding the plaintiff to the custody of Bridgeport Correctional Institution ("Bridgeport") for violating his parole.

Correctional Counselor Trainee Biga was assigned to the orientation unit at Bridgeport.  On September 9, 2005, Counselor Biga attempted to provide the plaintiff with a speedy trial application, but he declined to accept the form.

On September 15, 2005, prison officials transported the plaintiff to the Connecticut Superior Court for the Judicial District of Bridgeport for a pretrial hearing on the charges pending against him in the two criminal cases.   The attorney who had been appointed to represent the plaintiff informed the judge that she had a conflict, could not represent the plaintiff and asked for a continuance to

find a special public defender to represent the plaintiff.  The judge granted the continuance until September 21, 2005.

On September 16, 2005, prison officials at Bridgeport transferred the plaintiff to Cheshire Correctional Institution ("Cheshire").  On September 20, 2005, the Chairman of the Connecticut Board of Parole signed a Warrant for the re-imprisonment of the plaintiff pending parole revocation proceedings.

The plaintiff appeared in Connecticut Superior Court for a hearing in his two criminal matters.  Special Public Defender Rasile was assigned to represent the plaintiff in his two criminal cases.

On October 6, 2005, at the Connecticut Superior Court for the Judicial District of Bridgeport, the plaintiff was arraigned in a third case on one count of assault in the second degree in violation of Conn. Gen. Stat. § 53a-60 and one count of criminal possession of a pistol in violation of Conn. Gen. Stat. § 53a-217c.  Special Public Defender Rasile appeared with the plaintiff at this arraignment.

On October 13, 2005, Special Public Defender Rasile appeared for a pretrial hearing in all three of his criminal cases in Connecticut Superior Court without the plaintiff.  Attorney Rasile informed the judge that the plaintiff wanted all of his pending criminal cases to go to the firm jury list and would not accept any plea deals.   The prosecutor asked for a continuance until October 25, 2005, to find out whether the plaintiff would be indicted in federal court.  The judge granted the request.

On October 25, 2005, the plaintiff appeared with Special Public Defender

Rasile for a pretrial hearing in Connecticut Superior Court.   Attorney Rasile again asked that the cases be put on the firm jury list.   The judge granted the request and placed all three cases on the firm jury list and continued the case until December 5, 2005.

On December 5, 2005, Special Public Defender Rasile appeared for a pretrial hearing in all three of his criminal cases in Connecticut Superior Court without the plaintiff.  The judge placed the cases on the jury list for January 23, 2006.  The judge noted that Attorney Rasile had filed a motion for speedy trial.  Attorney Rasile indicated that he would not go forward with the motion at that time.  The judge made clear that the continuance until January 23, 2006 was at the plaintiff's request such that the time between December 5, 2005 and January 23, 2006 would not count toward the speedy trial time limitation.

On February 27, 2006, Special Public Defender Rasile appeared for a pretrial hearing in all three of the plaintiff's criminal cases in Connecticut Superior Court without the plaintiff.   The judge noted that the plaintiff had been indicted in federal court and continued all three cases on the firm jury list until May 1, 2006.

On May 1, 2006, Special Public Defender Rasile appeared for a pretrial hearing in all three of the plaintiff's criminal cases in the Connecticut Superior Court without the plaintiff.   The judge noted that nolles would enter on all charges in the three cases.

The plaintiff's inmate file includes an Inmate Telephone System Enrollment Form completed by the plaintiff on September 6, 2005.  The form identified three

individuals who the plaintiff sought to contact via telephone.  Those individuals were: Shantee Pettway, Marsha Nessa and Jerome Austin.

State of Connecticut Department of Correction Administrative Directive 10.6, effective June 15, 2004, governs Inmate Visits.  Inmates may be granted the privilege of a contact visit with an approved individual.  During a contact visit, there is nothing separating the inmate and the approved individual.  Inmates may be also be granted the privilege of a non-contact visit with an approved individual.   During a non-contact visit, a screen, solid glass partition, or other partition physically separates the visitor from the inmate.

Inmates may visit with members of their immediate family, including children. A child under the age of eighteen, must be accompanied by an authorized adult, who is an immediate family member on the authorized visitor list, a legal guardian or an adult properly authorized by the Department of Children and Families.  The child must remain under the supervision of that adult visitor at all times.

Ms. Jacobowski held the position of correctional counselor and was assigned to Cheshire Correctional Institution, a level four prison housing sentenced adult offenders, at all times referenced in the complaint.   As a correctional counselor, Ms. Jacobowski was a liaison between the inmates and the correctional system.  In 2005, Counselor Jacobowski was responsible for over 100 inmates in E Block Unit. The plaintiff was an inmate in this housing unit.  Part of her responsibilities included answering requests for speedy trial applications and visitor applications.

In 2005, Counselor Jacobowski delivered a written note without a date to the

plaintiff informing him that his girlfriend, Shantee Pettway, had given birth to a baby girl. The first recorded visit by the plaintiff's girlfriend was on November 10, 2005. On March 25, 2008, the plaintiff was confirmed to be the father of Shantee Pettway's baby born in 2005. The plaintiff visited with Shantee Pettway and his baby girl on September 2, 2008.

In 2005, Ms. Senecal held the rank of Correctional Counselor Supervisor at Cheshire. She supervised prison staff at Cheshire, including correctional counselors. She also supervised the operation of the records department.

All communications regarding an inmate would be filed by a member of the records department in the inmate's master file. Communications included mittimuses, habeas hearings, scheduled release documentation and requests for calculations of an inmate's sentence. Correctional Counselor Senecal ensured the inmate master files were properly maintained and also checked the work performed by the record department staff for accuracy.

Correctional Counselor Jacobowski responded to the plaintiff's speedy trial application requests dated in October and November 2005, the plaintiff's visiting application requests dated in November 2005 and plaintiff's request regarding the status of his Connecticut criminal charges dated in November 2006. Correctional Counselor Supervisor Senecal did not personally respond to any of the plaintiff's October or November 2005 written requests regarding his visiting application or speedy trial application.

8

## III.   Discussion

The defendants offer five arguments in support of their motion for summary judgment.  The contend that: (1) they did not violate the plaintiff's rights under the Eighth Amendment; (2) they did not violate the plaintiff's right to access to courts as guaranteed by the First Amendment; (3) they did not violate the plaintiff's speedy trial rights under the Sixth Amendment or Article 1, Section 8 of the Connecticut Constitution ; (4) they did not violate the plaintiff's rights to equal protection under the Fourteenth Amendment; and (5) the plaintiff has not alleged the personal involvement of defendant Senecal in the alleged constitutional violations.

### A.   Visitation Claim

Mr. Aquart claims protection under both the Eighth and Fourteenth Amendments of the United States Constitution.  The Eighth Amendment protects the rights of a convicted prisoner while the Fourteenth Amendment protects the rights of a pretrial detainee.  *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (in contrast to a sentenced prisoner, whose conditions of confinement are analyzed under the Cruel and Unusual Punishment Clause of the Eighth Amendment, "the proper inquiry [for a pretrial detainee] is whether conditions [of confinement] amount to punishment of the detainee" under the Due Process Clause of the Fourteenth Amendment).  *See also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996)(finding that the Eighth Amendment does not apply to plaintiff's medical care claim because he was a pretrial detainee not a convicted prisoner); *Cuoco v.*

9

*Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000)(holding that the plaintiff was not "punished" as a pre-trial detainee and that the Eighth Amendment does not apply to her deliberate indifference claim).

It is undisputed that in early September 2005, the plaintiff was arrested and charged with violations of five Connecticut criminal statutes.  Def. 56(a) statement ¶3 and Att. F ¶7;  Aff. Steele ¶7 & Ex.3.  At the time, the plaintiff was on parole from a five-and-a-half year (66 month) Connecticut sentence.  See Id.  On September 6, 2005, pursuant to a Remand to Custody Order signed by Board of Parole officials on September 3, 2005, the plaintiff was remanded to the custody of the Connecticut Department of Correction to complete the remainder of the unexpired term of his sentence.  Def. 56(a) statement ¶¶1&2;  Aff. Steele ¶5.  On September 13, 2005, the Board of Parole issued a warrant for his re-imprisonment.  Def. 56(a) statement ¶¶1-7&9; Aff. Steele Ex.5.  While serving the remainder of his sentence, plaintiff was charged on October 6, 2005 with five State of Connecticut criminal offenses.  Def. 56(a) Statement ¶3.  These charges were nolled on May 1, 2006.  Aff. Steele Ex.4.  At all times during which the Connecticut criminal charges were pending, plaintiff was held as a convicted prisoner consequent to a parole violation.  Therefore, the plaintiff was at all times relevant to his visitation claim, a convicted prisoner protected by the Eighth Amendment.

A convicted prisoner's rights are protected under the Eighth Amendment's prohibition against "cruel and unusual punishment."  To prove a violation of the Eighth Amendment, a convicted prisoner must prove "1) that the deprivation alleged

is objectively sufficiently serious such that the plaintiff was denied the minimal civilized measure of life's necessities, and 2) that the defendant official possessed a sufficiently culpable state of mind associated with the unnecessary and wanton infliction of pain." *Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003)(internal citations omitted).

Regardless of a convicted prisoner's constitutional rights, the United States Supreme Court has held that where prison regulations bear a rational relation to legitimate penological interests, the courts are to afford substantial deference to the professional judgment of prison administrators who bear a significant responsibility for defining a corrections system's legitimate goals and determining the most appropriate means to accomplish them. *See Overton v. Bazzetta et al.*, 539 U.S. 126 (2003). In that case, the Court applied a four-factor analysis to respondent's claims that their rights to visitation had been unconstitutionally curtailed by a 1995 revision in the Michigan Department of Corrections' prison visitation policies. *Id.* at 130. The relevant factors in determining whether a prison regulation affects a constitutional right that survives incarceration withstands a constitutional challenge are 1) whether the regulation has a valid rational connection to a legitimate government interest, 2) whether alternative means are open to inmates to exercise the asserted right, 3) what impact an accommodation of the right would have on guards and inmates and prison resources, and 4) whether there are ready alternatives to the regulation. *Id.* at 132 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

11

The Court determined that a policy limiting visits by minors to those children who were related to the inmate and accompanied by an adult who was either an immediate family member or a legal guardian did not infringe on the prisoners constitutionally protected rights because 1) there was a rational relationship to the legitimate penological interest of ensuring that the visiting children are accompanied and supervised by those adults charged with protecting the child's best interests, 2)  that available, albeit non-ideal alternatives such as telephone and letter writing means existed to exercise the right of contact of non-incarcerated relations, 3)  the costs and resources of not promulgating this policy outweighed accommodating the prisoner's request, and 4) that the current policy was the most effective means for achieving the goals of the penological system.  The Court therefore reversed the findings below and found that the policy promulgated was rationally related to a legitimate penological interest and that there was no violation of the Eighth Amendment because it did not impose a dramatic departure from accepted standards for conditions of confinement, create an inhumane prison condition, or invoke or create circumstances for deliberate indifference.

The Overton Court's analysis is on all fours with the present claim and controls Mr. Aquart's visitation allegation.  The State of Connecticut Department of Correction Administrative Directive 10.6, proscribes the procedure for inmate visitation.  Under that Directive, "[t]he Department of Correction shall provide for visits to inmates in accordance with sound correctional practices."  Aff. Chartier ¶12 & Ex.1.  In addition, "except as required by law visitation shall be considered a

privilege and no inmate shall have entitlement to a visit." Id. Administrative

Directive 10.6 defines a "child visit" as "a minor child, under 18 years old" who is

"visiting an inmate that is an immediate family member." Id. The Directive further

states that "[t]he Unit Administrator shall require verification of the visiting

application information or any other information deemed significant." Id.

Connecticut prison officials request evidence of paternity for all inmates who

request visitation with their newborn children to prevent harm or other injury during

the visit. Id. ¶11-13; Aff. Jacobowski ¶13-15.

The defendants do not address the third and fourth *Turner* factors in their

Motion for Summary Judgment or supporting statements. They do not address the

cost of reallocating the prison system's financial resources or the possible

impairment on corrections officers to protect everyone within the prison walls. Nor

do they address whether the presence of ready alternatives would undermine the

reasonableness of the regulations.

Assuming arguendo that the plaintiff's visitation policy was not rationally

related to a legitimate penological interest and, therefore, their actions are not

entitled to deference, the court next turns to the allegation that their visitation policy

violated the plaintiff's Eighth Amendment rights to visit his newborn child. In so

doing, the court will look to the facts for an objectively serious deprivation of the

plaintiff's visitation rights such that he was denied the minimal necessities of

civilized life and to whether the defendants possessed a sufficiently culpable state

of mind associated with the alleged unnecessary and wanton infliction of pain on

13

the plaintiff.

The parties agree that the plaintiff was afforded a visitation with his daughter in 2006.  In paragraph 33 of his 56(a) statement, the plaintiff writes:

> "Plaintiff was declining to visit with anyone on or around Oct. 10th 2006 & had no idea at that time who was trying to visit with him on that date because to his knowledge the people he wanted to see the most (the woman who raised him & his own child) were not being sent a visiting application to even be considered & by that time he believed his relationship with his fiancée to be over." (sic.)

Def. 56(a) ¶33.  The Department of Correction visitation log confirms a daytime visitation on October 10, 2006 by the child and her mother.  Aff. Dzurenda Ex.1. Furthermore, the parties agree that Mr. Aquart was asked to provide evidence of paternity such as the newborn's social security number or birth certificate.  Aff. Jacobowski ¶13-16; Compl. Ex.6.  Therefore, the evidence shows that the officials acted in accordance with their policy.  The record also indicates that the defendant placed Shante Pettway, the mother of plaintiff's newborn child, on his telephone system enrollment form on September 6, 2005.  Aff. Steele Ex.7.  The court therefore finds that the defendants provided the plaintiff with an alternative means to contact his family and that the plaintiff availed himself of this resource.  Therefore the defendants could not have infringed on his right to maintain family relations.  In fact, defendants went so far as to violate their own policy by permitting plaintiff's child to visit before receiving proof of paternity.

Applying these agreed facts to an Eight Amendment analysis, the Court finds that the plaintiff's claims are insufficient.  Cruel and unusual punishment cannot be

found where defendant's broke policy to afford the plaintiff an opportunity to see his newborn child and the plaintiff refused to accept that visit from his child in 2006. Further, the plaintiff has provided no factual basis for finding that the defendant's possessed a sufficiently culpable state of mind to inflict unnecessary and wanton pain or racial discrimination on the plaintiff's psyche as he alleges in his complaint. The court, therefore, concludes that even by some stretch of the imagination there were no rational penological interest served by the visitation policy, the actions of the defendants in accord with the policy did not infringe on the defendant's Eighth Amendment rights.  Summary judgment on this claim is therefore granted for the defendants.

### B.   <u>Access to Courts Claim</u>

The plaintiff alleges that the defendants violated his right of access to courts when they failed to provide him with a speedy trial application during the months of October and November 2005.   The defendants argue that they did not deny him access to courts.

It is well settled that inmates have a First Amendment right to "petition the Government for a redress of grievances."  U.S. Const. amend. I.  This right, which is more informally referred to as a "right of access to the courts," requires States "'to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights'" in collateral or direct challenges to their sentences or in an action challenging their conditions of confinement.   *Lewis v.*

*Casey*, 518 U.S. 343, 350-51, 355 (1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 825 (1977))*.*  To state a claim of denial of access to the courts, a plaintiff must allege that a defendant caused an "actual injury" by taking action or being responsible for actions that "hindered [plaintiff's] efforts to pursue a legal claim." *Lewis*, 518 U.S. at 349, 351.   Thus, actual injury pertains to the underlying claims that a plaintiff could have asserted if he had not been denied access to court.  *See Christopher v. Harbury*, 536 U.S. 413, 415 (2002) (explaining that the right to access the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court.").  In *Lewis*, the Supreme Court cautioned that "the [actual] injury requirement is not satisfied by just any type of frustrated  legal claim" but requires "an arguable" nonfrivolous claim.  *Id.* at 353, 354 n. 3.

The plaintiff claims that upon his incarceration within the Department of Correction on September 6, 2005, he was entitled to pursue his speedy trial rights by filing a written notice of his place of imprisonment and a request for final disposition of the indictment or information that had been filed against him in Connecticut Superior Court.   Connecticut General Statutes § 54-82c(a) provides:

> Whenever a person has entered upon a term of imprisonment in a correctional institution of this state and, during the continuance of the term of imprisonment, there is pending in this state any untried indictment or information against such prisoner, he shall be brought to trial within one hundred twenty days after he has caused to be delivered, to the state's attorney or assistant state's attorney of the judicial district or geographical area, in which the indictment or information is pending, and to the appropriate court, written notice of the place of his imprisonment and his request for final disposition to be

16

> made of the indictment or information. For good cause
> shown in open court, the prisoner or his counsel being
> present, the court may grant any necessary or reasonable
> continuance. The request of the prisoner shall be
> accompanied by a certificate of the warden, community
> correctional center administrator or other official having
> custody of the prisoner, stating the term of commitment
> under which the prisoner is being held, the time already
> served, the time remaining to be served on the sentence,
> the amount of good time earned, the time of parole
> eligibility of the prisoner and any decisions of the Board of
> Pardons and Paroles relating to the prisoner.

Conn. Gen. Stat. §54-82c.   The plaintiff contends that the defendants refused to provide him with the necessary speedy trial application to enable him to submit that application to the warden at Cheshire, who would then forward the application together with the appropriate certificate to the state's attorney or assistant state's attorney and the Connecticut Superior Court for the Geographical Area in Bridgeport.

The defendants argue that Conn. Gen. Stat. §54-82c did not apply to the plaintiff because he was a detained parolee and had not entered upon a term of imprisonment.  In support of this conclusion, the defendants rely on the decision in *State v. Foshay*, 12 Conn. App. 1, 530 A.2d 611 (1987).   Defendant Foshay was a parolee who was confined within the Department of Correction pursuant to new criminal charges and was awaiting a parole revocation hearing.   *See id.* at 11, 530 A.2d at 617.  The court noted that the primary purpose behind Conn. Gen. Stat. § 54-82c was the same as the purpose behind the Interstate Agreement on Detainers Act, Conn. Gen. Stat. § 54-186, to alleviate the problems posed by outstanding detainers

on efforts at prisoner rehabilitation.   *See id.*  That court concluded that the plaintiff was essentially in the same position as a pretrial detainee with regard to his parole status as well as the new charges pending against him.   *See id.* at 12, 530 A.2d at 617.

The court further noted that the Connecticut Supreme Court had previously recognized that pretrial detainees are not persons within the class of individuals who are protected by detainer statutes because they do not possess an immediate interest in institutional rehabilitation programs.   *See id.* (citing *State v. Toste*, 198 Conn. 573, 586, 504 A.2d 1036, 1044 (1986) (citations omitted)).   Thus, the court concluded that the defendant, who had not entered upon a term of imprisonment with respect to either the parole violation charge or the pending criminal charges, was not in the position of sentenced inmates whom Conn. Gen. Stat.  § 54-82c was designed to protect.   Accordingly, he was not entitled to the speedy trial protections of that statute.

The plaintiff, like defendant Foshay, was incarcerated pursuant to a parole violation and was awaiting a parole revocation hearing as well as the disposition of new pending criminal charges.   Thus, it is apparent that he was not entitled to the speedy trial protections of Conn. Gen. Stat. § 54-82c at least as to his parole violation.

Even if the protections of Conn. Gen. Stat. § 54-82c applied to the plaintiff, he has not demonstrated that he was denied access to the courts with regard to his speedy trial rights.  The plaintiff does not dispute that Officer Biga offered him a

speedy trial application on September 9, 2005 at Bridgeport and that he declined to accept the application.   When he attempted to request the application from the defendants beginning on September 30, 2005, they did not provide him with the application.   The plaintiff, however, went to court on the Connecticut criminal charges on September 6, 2005, and the court appointed him a public defender. When the judge learned that his attorney had a conflict, a special public defender was appointed to represent the plaintiff.

On October 13, 2005, Special Public Defender Rasile appeared for a pretrial hearing in all three of the plaintiff's criminal cases in the Connecticut Superior Court for the Judicial District of Bridgeport and informed the judge that the plaintiff wanted all of his pending criminal cases to go to the firm jury list and would not accept any plea deals.   On October 25, 2005, Special Public Defender Rasile appeared for a pretrial hearing on all the criminal matters and again pressed his request the cases be put on the firm jury list.   The judge granted the request and placed all three cases on the firm jury list and continued the case until December 5, 2005.

On December 5, 2005, Special Public Defender Rasile appeared for a pretrial hearing in all three of the plaintiff's criminal and filed a motion for speedy trial. Pursuant to the request of the prosecutor, a Judge nolled all of the plaintiff's Connecticut charges on May 1 2006.

Thus, the court concludes that even if § 54-82c was applicable to the plaintiff, he was not denied access to the courts with regard to any opportunity to pursue his

speedy trial rights.  The motion for summary judgment is granted as to the claim of denial of access to courts in connection with the plaintiff's Connecticut criminal charges.

 

C.   <u>Speedy Trial Claims</u>

The plaintiff claims that his Sixth Amendment right to a speedy trial as well as his right to a speedy trial as guaranteed by Article 1, Section 8 of the Connecticut Constitution the was violated by the defendants.  The  Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . .".  The Connecticut Constitution provides that "[i]n all criminal prosecutions, the accused shall have a right . . . to a speedy, public trial by an impartial jury."

In evaluating a Sixth Amendment speedy trial claim, the United States Supreme Court and the Connecticut Supreme Court analyze four factors: 1) the length of delay, 2) the reason for the delay, 3) the defendant's assertion of his right, and 4) prejudice to the defendant.  *See Barker v. Wingo*, 407 U.S. 514, 530 (1972); *State v. Nims*, 180 Conn. 589, 591, 430 A.2d 1306, 1308 (1980).   The four factors "are related factors and must be considered together with such other circumstances as may be relevant."  *Barker*, 407 U.S. at 533.  Thus, courts must apply a balancing test on a case by case basis.

Connecticut General Statutes 54-82m (rules for speedy trials) provides in pertinent part that "when such defendant is incarcerated in a correctional institution

20

of this state pending such trial and is not subject to the provisions of section 54-82c, the trial of such defendant shall commence within eight months from the filing date of the information or indictment or from the date of arrest, whichever is later. . . ."  The plaintiff's Connecticut criminal charges were nolled just under eight months after the plaintiff's arrest, which is a much shorter delay than in many other cases where no speedy trial violation was found.  *See Flowers v. Warden. Conn. Corr. Inst., Somers*, 853 F.2d 131, 132-34 (2d Cir.1988) (finding no speedy trial act violation from a seventeen-month delay and citing cases coming to the same result after delays ranging from twenty-one months to six years).  Thus, the plaintiff has not shown an excessive delay in the disposition of the state criminal charges.

The cause of the delay was due to requests for continuances by the plaintiff's special public defender as well as the prosecutor.  Those continuances, however, are excludable time periods under Connecticut Practice Book § 43-40.   Accordingly, the plaintiff has not demonstrated an unacceptable cause for the delay.

The plaintiff's attorney did file a motion for speedy trial on December 5, 2005, at a court pre-trial hearing.  The plaintiff's criminal cases were then disposed of on May 1, 2006.  The plaintiff claims that if the  Connecticut criminal charges had been disposed of sooner, those charges could not have been used by the United States Attorney to indict him on federal criminal charges.

The record reflects that on December 12, 2005, the United States Marshal had lodged a detainer with the Department of Correction pertaining to an arrest warrant charging the plaintiff with conspiracy to possess with intent to distribute cocaine

base in violation of 21 U.S.C. §§ 841 and 846.  The plaintiff contends that he never saw the detainer or refused to sign for it.

The docket sheet in *United States v. Aquart, et al.*, Case No. 3:05cr309(PCD) reflects that on December 19, 2005, the court appointed counsel to represent Aquart and plaintiff pleaded guilty to one count of conspiracy to possess with intent to distribute Cocaine base.  The count in the plaintiff's federal indictment is not related to and does not appear to stem from the Connecticut criminal charges.  Thus, the disposition of the state charges had no bearing on the filing of the indictment in federal court.  The court concludes that the plaintiff has not shown that he was prejudiced by the delay in the disposition of the Connecticut criminal charges.  Accordingly, the plaintiff has failed to state a claim of a violation of his right to speedy trial under either the Sixth Amendment to the United States Constitution or under Article 1, Section 8 of the Connecticut Constitution.  The motion for summary judgment is granted on this ground.


   D.   Equal Protection Claim

The plaintiff alleges that defendant Jacobowski refused to provide him with the necessary forms to permit his newborn daughter to visit him.  He contends that she provided other inmates, who were not black, with visitation forms and did not require them to submit additional information regarding their newborn babies or young daughters or sons.

The defendants argue that the plaintiff has failed to provide evidence to show

22

that defendant Jacobowski treated him differently than other similarly situated inmates.  Thus, the defendants contend that the plaintiff has failed to state an Equal Protection claim.

To establish an equal protection claim based on racial discrimination, a prisoner must demonstrate that (1) he was treated differently than similarly situated prisoners (2) because of his race.  *See Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (holding plaintiff "must prove purposeful discrimination . . . directed at an identifiable or suspect class" to demonstrate equal protection violation) (citations omitted).

The plaintiff declares that he attempted to get affidavits from the two inmates that he referenced in his complaint, Jorge Andino Rodriguez and Michael LaForge, but he was transferred to Northern Correctional Institution and does not have access to his legal materials or know where these inmates are currently incarcerated.  He states that he asked several prison officials at Northern to permit him to contact these inmates in an effort to get affidavits from them, but none of the officials have approved his request.  The plaintiff also indicates that he would like to try to secure visitation information for these inmates which would show dates of visitation and names and ages of visitors, but thinks it is unlikely that Department of Correction officials would provide him with this information for safety and security reasons.

Rule 56(d) of the Federal Rules of Civil Procedure permits a litigant to conduct discovery if it is necessary to oppose a summary judgment motion. Specifically, the

23

rule states:

> When Facts Are Unavailable to the Nonmovant. If a
> nonmovant shows by affidavit or declaration that, for
> specified reasons, it cannot present facts essential to
> justify its opposition, the court may: (1) defer considering
> the motion or deny it; (2) allow time to obtain affidavits or
> declarations or to take discovery; or (3) issue any other
> appropriate order.

Fed. R. Civ. P. 56(d).  The court concludes that the plaintiff has submitted a
sufficiently specific declaration in which he describes the discovery he seeks, how
he might obtain that discovery information and material and has also explained how
the affidavits of the two inmates he claims were treated differently with regard to
their visitation requests would create an issue of fact with regard to his Equal
Protection claim.  *See Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d
566, 573 (2d Cir.2005) (the party seeking discovery must "make a specific proffer as
to the discovery it would seek," and "a bare assertion that the evidence supporting
a plaintiff's allegation is in the hands of the defendant is insufficient") (citation and
internal quotation marks omitted).  Thus, the court denies the motion for summary
judgment without prejudice as to the Equal Protection claim.  In order to overcome
summary judgment, plaintiff must prove by admissible evidence not only that he
was treated differently but that he was so treated because of racial animus.

### E.    Personal Involvement

Defendant Senecal argues that the plaintiff has not alleged her personal
involvement in the violations of his constitutional rights.   Because the court has

granted summary judgment for the defendants as to the claims of access to courts and speedy trial rights, the court considers whether the plaintiff has alleged the personal involvement of defendant Senecal in his visitation claim.

To recover money damages under section 1983, plaintiff must show that these defendants personally involved in the constitutional violations. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Defendant Senecal is a supervisory official. She cannot be held liable under section 1983 solely for the acts of their subordinates. *See Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

The plaintiff may show supervisory liability by demonstrating one or more of the following criteria: (1) the defendant actually and directly participated in the alleged unconstitutional acts; (2) the defendant failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) the defendant created or approved a policy or custom that sanctioned objectionable conduct which rose to the level of a constitutional violation or allowed such a policy or custom to continue; (4) the defendant was grossly negligent in supervising the correctional officers who committed the constitutional violation; or (5) the defendant failed to take action in response to information regarding the occurrence of unconstitutional conduct. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted). In addition, plaintiff must demonstrate an affirmative causal link between the inaction of the supervisory official and his injury. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), the Supreme Court

25

found that a supervisor can be held liable only "through the official's own individual actions." *Id.* at ___, 129 S. Ct. at 1948.  This decision arguably casts doubt on the continued viability of some of the categories for supervisory liability.  The Second Circuit, however, has not revisited the criteria for supervisory liability following *Iqbal*.  *See DeJesus v. Albright*, No. 08 Civ. 5804 (DLC), 2011 WL 814838, at *6 n. 4 (S.D.N.Y. Mar. 9, 2011).  Because it is unclear as to whether *Iqbal* overrules or limits *Colon* the court will continue to apply the categories for supervisory liability set forth in *Colon*.

The plaintiff's complaint mentions Counselor Supervisor Senecal only once.  At the end of claim three which includes allegations regarding the plaintiff's speedy trial rights, the plaintiff alleges that Counselor Supervisor Senecal, as a member of the Records Department, was well aware of the importance of my desire to exercise my right to a speedy trial.  The plaintiff does not otherwise mention defendant Senecal.  There are no allegations against her with regard to the visitation claim.

In his affidavit and memorandum in opposition to the motion for summary judgment, the plaintiff asserts that he would speak to Counselor Supervisor Senecal about his situation on his way to eat meals.  The plaintiff states that Counselor Supervisor Senecal was aware of his speedy trial requests, discussed visiting issues and speedy trial issues with him and often accepted and reviewed requests and responses to these issues that originated from her office.  The plaintiff may not, however, amend his complaint in a memorandum in opposition to the motion for summary judgment.  *See, e.g., Lyman v. CSX Transp., Inc.*, No. 09-2548-cv, 2010 WL

445613, at *2 (2d Cir. Feb. 8, 2010) (affirming district court's determination that it should not consider claims raised for the first time in opposition to summary judgment (citations omitted); *Allah v. Poole*, 506 F. Supp. 2d 174, 193 (W.D.N.Y. 2007) ("a memorandum of law or other motion papers are not proper vehicles by which to raise claims that are not asserted in the complaint"); *Mutts v. S. Conn. State Univ.*, No. 04CV1746, 2006 WL 1806179 at *7 (D. Conn. June 28, 2006)(declining to consider new claim raised for first time in plaintiff's memorandum opposing the defendant's motion for summary judgment)*; Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (declining to address merits of claim that "does not appear anywhere in the amended complaint and did not enter the case until [the plaintiff] mentioned it for the first time in her opposition memoranda to the motion to dismiss").

Further, while he alleges that Counselor Supervisor Senecal was aware of these issues he does not aver that she was involved in or aware of his requests for visitation with his newborn daughter or that her awareness triggers liability, he has not stated a claim of a violation of his constitutionally protected rights against her. The motion for summary judgment is granted as to the claims against defendant Senecal.


IV.    <u>Conclusion</u>

The Defendants' Motion for Summary Judgment [Doc. No. 32] is GRANTED as to the First Amendment claims of access to the courts, the speedy trial claims under

both the Sixth Amendment to the United States Constitution and Article 1, Section 8 of the Connecticut Constitution and the and all claims against defendant Senecal. The Motion is denied as to the visitation claim and the Equal Protection claim against defendant Jacobowski.

SO ORDERED this 30th day of March 2012, at Hartford, Connecticut.

_____/s/_____
Vanessa L. Bryant
United States District Judge

28